UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERROLD RHODES and RACING GROUP IKON INTERNATIONAL, INC., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CORNELL HAYNES, JR., a.k.a. NELLY, )<br>et al, )<br>)<br>Defendants. ) | Case No. 4:06CV1703 HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Haynes and Fillmore Street Brewery's Motion to Dismiss Count I and Count V of Plaintiffs' First Amended Complaint for Failure to State a Claim, [Doc. No. 44]. Plaintiffs oppose the motion. For the reasons set forth below, the Motion is granted in part and denied in part.

Defendants seek to dismiss Count I of the First Amended Complaint because they contend it does not sufficiently allege fraud under Rule 9(b) of the Federal Rules of Civil Procedure. They seek to dismiss Count V in that it is a claim for punitive damages, a claim which they contend does not exist under Missouri law.

**Procedural and Factual Background**[1]

The Court originally dismissed portions of Plaintiffs' Complaint because the Complaint failed to allege fraud with the required specificity. Subsequently, Plaintiffs amended the Complaint. The Amended Complaint sets forth the following: Plaintiff Jerrold Rhodes is an established National Hot Rod Association and NOPI Drag Racing Association racecard driver. Plaintiff Racing Group is a drag racing corporation.

On or about May 26, 2005, Defendant Wildgoose prepared a written racing sponsorship proposal, and while ostensibly acting as Plaintiffs' fiduciary or agent, presented the proposal to Defendants Haynes and Fillmore Street Brewery, LLC. (Fillmore). On or about June 10, 2005, Wildgoose represented to Plaintiff Jerrold Rhodes by telephone that Haynes and Fillmore had agreed to the contract and would be Plaintiffs' primary racing sponsor. Julie Wildgoose specifically mentioned having met with and spoken with Defendants Wolfsberger and Wooten, employees and agents of Fillmore Street Brewery the other "Pimpjuice Defendants" (designated in Plaintiffs' First Amended Complaint as: Defendants Haynes,

---

[1] These "facts" are taken from Plaintiffs' First Amended Complaint. They are set forth for the purposes of the Motion to Dismiss only, and this recitation in no way relieves any party of proof of the facts in later proceedings.

Pimpjuice[2], Fillmore Street Brewery, LLC, and Does 1 to 25). Throughout the month of June, 2005, Wolfsberger and Wooten stated to Plaintiff Jerrold Rhodes repeatedly by telephone from the Fillmore Street Brewery office in St. Louis, Missouri that they were excited about Pimpjuice and Fillmore Street Brewery sponsoring Plaintiff's race car. They talked about getting the Pimpjuice graphics on the Plaintiff's race car and trouble getting the graphics shipped to Plaintiff. Some of the graphics were held until Rhodes got to St. Louis for the NOPI race approximately July 21 or 22, 2005. On or about July 1 through July 28, 2005, the Pimpjuice Defendants also represented that they had agreed to the sponsorship contract by issuing a written press release that was also posted on their website announcing their sponsorship of the Plaintiffs. Plaintiffs' First Amended Complaint sets the full text of the press release dated July 28, 2005.

The First Amended Complaint further states that Defendants sent Pimpjuice logos for Plaintiffs' vehicles prior to the St. Louis NOPI race; hosted a debut party in St. Louis, Missouri on the Friday before the St. Louis race in July, 2005 that was announced and promoted in advance. This promotion stated that Plaintiff Rhodes was Pimpjuice's "newest whip" the "Pimp Juice PRO FWD Honda, Piloted by

---

[2] Plaintiffs claim that "Pimpjuice" is "a brand of beverage and business organization, form unknown."

Jerrold Rhodes. The announcement further stated that the race car would be making its public debut on July 22, 2005, with further details of the place and time of the party, the specifics regarding activities and giveaways.

According to the facts set forth in the First Amended Complaint, the party was attended by Defendant Wildgoose and most or all of the officers and employees of Fillmore Street Brewery and the other Pimpjuice Defendants. Plaintiffs' race car bearing the Pimpjuice logos was displayed for the public and press to see and photograph. Plaintiffs also allege that another employee of the Fillmore Street Brewery and the other Pimpjuice Defendants present at the race also told Plaintiff Rhodes that he was excited about the Pimpjuice sponsorship.

According to the allegations of the First Amended Complaint, at the St. Louis race on the weekend of July 22-24, 2005, Defendant Wildgoose told Rhodes that she had the signed contract, but forgot to bring it. Wildgoose continued to give excuses for failing to bring the contract to Plaintiffs.

On Monday, July 25, 2005, Defendants Wolfsberger and Wooten said to Rhodes that they were excited that Pimpjuice and Fillmore Street Brewery were participating in the sponsorship program with Plaintiffs. Plaintiffs allege that Haynes, Wildgoose, Inc., Media in Motion, and Does 1 to 50 conspired with Defendants Fillmore Street Brewery and Julie Wildgoose to develop the statements

that were made to Plaintiffs and the press releases and advertisements that were issued, to ship logos and products and t-shirts to Plaintiffs, and otherwise falsely lead Plaintiffs to believe that a sponsorship agreement had been reached. Plaintiffs contend that they ratified the statements and actions of Defendants Julie Wildgoose, Wolfsberger, Wooten, and Fillmore Street Brewery, and others known and unknown that contributed to the perpetration of fraud on Plaintiffs. Plaintiffs allege that all of the actions taken and statements made were for the express purpose of leading Plaintiffs to believe that the Pimpjuice Defendants had executed a sponsorship contract.

The First Amended Complaint alleges that the representations were deliberately false, that the Pimpjuice Defendants never signed a contract and had no intention of actually fulfilling the proposed contract, but had, in fact, entered into a separate agreement with Defendant Wildgoose wherein the Pimpjuice Defendants would accept the benefits of advertising and promoting their product at Plaintiffs' expense without making any payments to Plaintiffs. These acts, according to the First Amended Complaint were intentional and were made with he intent to defraud Plaintiffs and to induce them to advertise and promote the Pimpjuice Defendants' product. The Pimpjuice Defendants refused to pay Plaintiffs a sponsorship fee. Plaintiffs allege damages as a result of these actions.

## Discussion

## Standards of Review

The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint. On May 21, 2007, however, the Supreme Court determined that *Conley*'s "no set of facts" language "has earned its retirement." *Bell Atlantic Corp. v. Twombly,* __ U.S.__, __, 127 S.Ct. 1955, 1969 (May 21, 2007). Noting the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" the Supreme Court held that a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1964-65, 1974. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. The Supreme Court explained that this new standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* On the other hand, the Supreme Court noted that "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). When considering a motion to dismiss, courts are still required to accept the complaint's factual allegations as true and to construe them in the light most favorable to the plaintiff.

*Id.*; *Krentz v. Robertson Fire Protection District,* 228 F.3d 897, 905 (8th Cir. 2000). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). A complaint should not be dismissed "merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." *Krentz*, 228 F.3d at 905.

Complaints alleging fraud must further comply with Rule 9(b) of the Federal Rules. Thus, federal procedural law requires that allegations of fraud be pleaded with particularity. *See* Fed.R.Civ.P. 9(b); *Great Plains Trust Co. v. Union Pacific R. Co.,* 2007 WL 1855643, *7 (8th Cir. 2007). "'This means the who, what, when, where, and how: the first paragraph of any newspaper story.' *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). And although we must take all factual allegations as true when considering a motion to dismiss, we need not accept conclusory legal allegations as true. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)." *Id.*

Count I of the First Amended Complaint specifically sets out the who, what, where, when, and how of the alleged fraud. Plaintiffs give a detailed account of the actions they contend constitute fraud. They have now specified where and when the alleged fraudulent acts occurred. They set out what the misrepresentations were and who participated in the representations and who ratified the actions of others. They now specifically set out the requirements of Rule 9(b) through detailed allegations. As such, the Motion to Dismiss is denied.

Defendants are correct, however, that punitive damages do not constitute a separate cause of action in Missouri.

> "A punitive damage claim is not a separate cause of action, it must be brought in conjunction with a claim for actual damages." *Misischia v. St. John's Mercy Med. Ctr.,* 30 S.W.3d 848, 866 (Mo.App. E.D.2000) (internal quotation omitted). Thus, "[a] plaintiff must prevail on his or her underlying claim to submit punitive damages to the jury." *Romeo v. Jones,* 144 S.W.3d 324, 334 (Mo.App. E.D.2004); *see also Moskovitz v. Mt. Sinai Med. Ctr.,* 69 Ohio St.3d 638, 635 N.E.2d 331, 342 (1994) ("[C]ompensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered."); *Caldor, Inc. v. Bowden,* 330 Md. 632, 625 A.2d 959, 973 (1993) (noting that there must be an compensatory damages award in a tort cause of action underlying an award of punitive damages); *Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998) ( "[R]ecovery of punitive damages requires a finding of an independent tort with accompanying actual damages.") (internal quotation omitted).

*Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 526 (Mo.App. W.D.

2007). (footnote omitted).

Plaintiff's argument that Defendants are preclude from now raising this issue because they failed to raise it in their original Motion to Dismiss is unavailing. The failure to argue that Count V should be dismissed does not miraculously create such a cause of action under Missouri law. Plaintiffs have sought punitive damages in another count of their First Amended Complaint, which is proper under Missouri law. Count V, therefore will be dismissed.

## **Conclusion**

Count I sufficiently sets forth allegations to satisfy the requirements of Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. However, Count V, seeking solely punitive damages as a separate claim, fails under Missouri law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, [Doc. No. 44], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Count V of Plaintiffs' First Amended Complaint is dismissed.

Dated this 28th day of August, 2007.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE