UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERROLD RHODES and RACING GROUP IKON INTERNATIONAL, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:06CV1703 HEA ) |
| CORNELL HAYNES, JR., a.k.a. NELLY, et al., | ) ) ) |
| Defendants. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motions for Summary Judgment, [Doc. No.'s 77 and 84]. Plaintiffs oppose the motions. For the reasons set forth below, the Motions are granted.

## **Introduction**

Plaintiffs brought this action against Defendants[1] in the Superior Court of the State of California for the County of Los Angeles seeking recovery for alleged fraud and misrepresentation, use of name, photograph, signature and likeness without consent, misappropriation of identity and image, intentional infliction of emotional

---

[1] Defendants Wildgoose, Julie Wildgoose, Inc. and Media In Motion have submitted a notice to the Court that these Defendants have settled with Plaintiffs. The notice provides that the settlement terms include a dismissal with prejudice of these defendants. To date, Plaintiffs have not filed any dismissals.

distress, punitive damages,[2] breach of contract, breach of oral contract, intentional interference with a prospective economic advantage, breach of fiduciary duties, and unjust enrichment. The matter was transferred to this Court on venue grounds on November 24, 2006.

**<u>Facts and Background</u>**

The facts of this matter are set out by the parties in their respective statements of controverted and uncontroverted material facts. Where appropriate, the Court will denote Plaintiff's objections to Defendant's statement of uncontroverted facts and the significance thereof.

Plaintiff Jerrold Rhodes is a race car driver and Plaintiff Racing Group Ikon International, Inc. was a motorsports marketing corporation of which Rhodes was the CEO. Ikon Racing ceased to exist as a business entity in or around March, 2006. Plaintiff does not dispute the fact that Ikon Racing no longer exists, but states that the business has been continued in a different form and the new business has a written agreement with the old business form that grants all rights and responsibilities to the new business form.

Defendant Fillmore Street Brewery, LLC (Fillmore) is a Missouri Limited Liability Company that distributes and advertises the beverage known as "Pimp

---

[2] The Court dismissed the punitive damages count on August 28, 2007.

Juice." Defendant Haynes (Nelly) is a musician and entertainer who is an officer and part owner of Fillmore. Defendants Wolfsberger and Wooten were, according to the Amended Complaint, at all times relevant, employees of Nelly and Fillmore Street Brewery, LLC.

Rhodes pursued Fillmore as a potential sponsor for Plaintiffs in August, 2004. In December, 2004, Rhodes met with a representative from Fillmore regarding potential sponsorship. Discussions about the potential sponsorship continued into the spring of 2005 after the 2005 racing season began. Around this time, Defendant Julie Wildgoose, who was in charge of marketing work for a different racing team, was brought in by Plaintiffs to help secure Fillmore's sponsorship of Plaintiffs.

On May 26, 2005, Wildgoose, acting on behalf of Plaintiffs, made a sponsorship proposal to Fillmore. The Proposal contained a reference to a $75,000 sponsorship fee for 2005 to be paid by Fillmore. Plaintiff Rhodes spoke with Defendant Wooten, Gary Wilds, an employee of Fillmore, and "other representatives of Fillmore Street Brewery" about the $75,000 amount for the first year of sponsorship. However, no representative of Fillmore ever agreed to pay a sponsorship fee, nor did any representative of Fillmore ever sign a contract agreeing to do so. Fillmore agreed to sponsor, but not pay, Plaintiffs by donating merchandise and product to Plaintiffs, which it did through providing Plaintiffs with

apparel for the team, hats, shirts, banners, stickers, and Pimp Juice. Defendants also paid for the graphics and logos to be put on Plaintiffs' race car. Plaintiffs accepted these items and product and displayed the Pimp Juice logos on his race car. Plaintiffs were also featured on the Pimp Juice website.

Plaintiffs dispute these facts insofar as they limit the sponsorship to non-monetary items. Plaintiffs offer in support of their position Rhodes' declaration which urges that Defendants did not make any such indication to Plaintiff, instead indicated that they were going to take care of him financially, and Gary Wilds of Fillmore indicated that "the contract was done." Although none of the Defendants specifically ever told Plaintiffs they would be paid $75,000, Plaintiff Rhodes testified in his deposition that he was told by Fillmore employees that they were going to take care of him financially, while it was Fillmore's understanding of the sponsorship arrangement that Plaintiffs would not receive compensation from Fillmore. Plaintiff Rhodes testified in his deposition that no one from Fillmore ever explicitly stated an amount of money would be paid to Plaintiffs. Further, Plaintiff Rhodes acknowledged that "they didn't want to stick their neck [sic] out like that, so they just said, 'We'll take care of you.'" Rhodes testified that he was told by both Wooten and Wolfsberger that he "would be funded by July, at the end of July[2005.]" Plaintiffs never received any documentation from Defendants that

indicated Plaintiffs would be paid any amount.

In September, 2005, Plaintiffs told Defendant Julie Wildgoose that she was no longer to be involved on their behalf in the sponsorship arrangement between Fillmore and Plaintiffs. Also in September, 2005, Rhodes and Wolfsberger came to an agreement that the "sponsorship" was no longer satisfactory for the parties and would be terminated. The Pimp Juice logo on Plaintiffs' car was removed in October, 2005. Rhodes did not have any communication with anyone from Fillmore in 2006.

Plaintiffs never had a single, direct communication with Nelly. He was never involved in the negotiations or execution of a contract with Plaintiffs. Nelly had no working relationship with Plaintiffs, nor did he have any business dealings whatsoever with Plaintiffs. Plaintiffs offer the Declaration of Rhodes in opposition to this fact. Plaintiffs contend that every person from Fillmore who talked to Plaintiffs about the sponsorship referenced Nelly as though he was making the decisions.

Defendants present evidence that they never issued or initiated any print or television advertisements or press releases using Rhodes' name, image or likeness. Plaintiffs urge that "no one else would spend the money for television ads."

Plaintiffs understood that the Proposal would take longer than one year to

perform; the Proposal states on its face that the sponsorship was for the 2005 racing season with options for the second and third years. Plaintiffs claim they were led to believe that they had agreed to two years. Plaintiff Rhodes' understanding was that he would receive $75,000.00 for the first year and $150,000.00 for each of the second and third years.

Fillmore did not make any profits as a result of any sponsorship of Plaintiffs. Fillmore has not made any profits since 2005 when it began to sponsor Plaintiffs.

Plaintiffs have not disclosed any expert witness, nor have Plaintiffs identified any medical doctors Plaintiff Rhodes saw for his emotional distress, although Plaintiff Rhodes declares that he did go to a medical doctor whose practice was called "the Doctor's Office" about five times.

## **Discussion**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation

omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson,* 62 F.3d at 241. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung* 422 F.3d 630, 638 (8th Cir. 2005). Viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, if there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir.2006).

Interestingly, Plaintiffs do not submit an opposing memorandum with any legal authority in opposition to Defendant's Motion. Rather, Plaintiffs merely dispute certain facts based on vague references to Rhodes' deposition testimony and the declaration he submitted in response to the Motion.

### **Defendant Haynes**

Defendant Haynes has been named in Plaintiffs' Amended Complaint as the owner of Pimp Juice. Thereafter, he is collectively referred to with the other defendants throughout the Amended Complaint. There are no specific allegations

with respect to him individually.

In Missouri, merely holding a corporate office does not subject one to personal liability for the misdeeds of the corporation. *Constance v. B.B.C. Dev. Co.,* 25 S.W.3d 571, 590 (Mo.App.2000); *Grothe v. Helterbrand,* 946 S.W.2d 301, 304 (Mo.App.1997). However, corporate officers may be held individually liable for tortious corporate conduct if they have actual or constructive knowledge of, and participated in, an actionable wrong. *Id.; Lynch v. Blanke Baer & Bowey Krimko, Inc.,* 901 S.W.2d 147, 153 (Mo.App.1995). This is true even when the officers are acting in their corporate capacity. *Id. See also Osterberger v. Hites Constr. Co.,* 599 S.W.2d 221, 229 (Mo.App.1980). In an action for inducing a breach of contract, a corporate officer is protected from individual liability, "provided no improper means are used, the defendant acts in good faith to protect the corporation[,] and does not act for his own benefit." *Lynch v. Blanke Baer & Bowey Krimko,* 901 S.W.2d at 153. Further, "[a]n individual is not protected from liability simply because the acts constituting the tort were done in the scope and course, and pertained to, the duties of his employment." *State ex rel. the Doe Run Resources Corp. v. Neill,* 128 S.W.3d 502, 505 (Mo.2004) (en banc) (internal quotations omitted). In other words, a manager who controls the operations of the corporation, and directs the wrong, may be held individually liable. *Id.* at 507.

Plaintiff has failed to present any evidence that Defendant Haynes participated in any way in the events giving rise to this action. Although Plaintiff Rhodes sets forth in his declaration that he was "lead to believe" Nelly was making decisions, such speculation and supposition do not satisfy the requirements of Rule 56. Plaintiff, as the non-moving party, may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *Honea,* 458 F.3d at 791. Judgment will be entered in favor of Defendant Haynes.

### **Fraud and Misrepresentation**

Under Missouri law, the elements that must be proven in order for a party to recover for fraud and fraudulent misrepresentation are: (1) a false material representation; (2) the speaker's knowledge of the falsity of the representation, or ignorance of its truth; (3) the speaker's intent that the hearer act upon the misrepresentation in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the misrepresentation; (5) the hearer's reliance on the truth of the representation; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused damage. *CADCO, Inc. v. Fleetwood Enterprises, Inc.,* 220 S.W.3d 426, 436 (Mo.App. E.D.2007); *Midwest Bankcentre v. Old Republic Title Co. of St. Louis 2008 WL 631546*, 11 (Mo.App. E.D.) (Mo.App. E.D. 2008); *BMK Corp. v. Clayton Corp.,* 226 S.W.3d 179, 193 (Mo.Ct.App. 2007) (quoting *Murray*

*v. Crank,* 945 S.W.2d 28, 31 (Mo.Ct.App. 1997)). The failure to establish any one of these elements is fatal. *Paul v. Farmland Indus., Inc.,* 37 F.3d 1274, 1277 (8th Cir.1994).

Fraud must be established by evidence and is never presumed. *Dechant v. Saaman Corp.,* 63 S.W.3d 293, 295 (Mo.App. E.D. 2001). Though fraud is not to be presumed, that because fraud is rarely susceptible of positive proof, a plaintiff may prove his case by circumstantial evidence. *See e.g., Chesus v. Watts,* 967 S.W.2d 97, 111 (Mo.App. W.D. 1998); *Board of Educ. of City of St. Louis v. Elam,* 70 S.W.3d 448, 451 (Mo.App. E.D. 2000). However, "before evidence may be taken as reasonably supporting an inference of fraud, it must rise above mere suspicion and point logically and convincingly to that conclusion." *Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 634 (Mo.App. E.D.1980); *See also, Board of Educ.,* 70 S.W.3d at 451. The proof must "be of such a positive and definite quality" as to convince the court of the fraud. *Scott v. Car City Motor Co., Inc.,* 847 S.W.2d 861, 865 (Mo.App. W.D.1992). *Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc*., 109 S.W.3d 200, 206 (Mo.App. E.D.,2003)
Here, the Court cannot say that there is proof of such a positive and definite quality to rise above a suspicion of fraud in this case.

Plaintiffs contend that they were repeatedly told they would be "taken care of

financially." Plaintiffs have not, however, presented any admissible evidence to establish that this alone establishes each element of fraud. Nowhere is there any definite or positive proof that Defendants represented to Plaintiffs that they would be paid a certain sum of money under a sponsorship agreement. One can attribute a variety of meanings to the only statement Plaintiff Rhodes declares was made, *i.e.*, that he would be "taken care of financially." Taken together with Defendants' understanding of the relationship between Fillmore and Plaintiffs, it is conceivable that the parties were clearly thinking and acting at different levels. Moreover, Plaintiff even recognizes that Defendants made no specific representation when Rhodes testified in his deposition that Defendants did not want to stick their necks out, and refused to commit to, in essence, any payment whatsoever. Plaintiff's disputes as to what transpired are too vague to establish a materially false misrepresentation on the part of Defendants.[3]

## **Use of Name, Photograph, Signature & Likeness**
## **Without Consent and Misappropriation**
## **of Identity & Image**

Counts II an III of Plaintiffs' Amended Complaint are brought pursuant to

---

[3] In the Amended Complaint, Plaintiffs allege that a separate agreement existed between Wildgoose and the Fillmore Defendants. The record before the Court is completely devoid of any evidence of any such agreement and therefore warrants no further discussion.

California law. Plaintiffs do not dispute that Missouri law applies to this action. As such, Counts II and III of the Amended Complaint are dismissed.

## Intentional Infliction of Emotional Distress

"To recover for intentional infliction of emotional distress, [a plaintiff] must show (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional distress resulting in bodily harm." *Cent. Mo. Elec. Co-op. v. Balke*, 119 S.W.3d 627, 636 (Mo.Ct.App. 2003) (citing *Thomas v. Special Olympics Missouri. Inc.*, 31 S.W.3d 442, 446 (Mo.Ct.App. 2000)). See also, *St. Anthony's Medical Center v. H.S.H.*, 974 S.W.2d 606, 611 (Mo.App.1998). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (internal quotations omitted).

Plaintiff Rhodes admits he never received any treatment for his alleged emotional distress. He declares that he saw a doctor about five times, but was unable to testify as to the doctor's name. He did not see a counselor, psychiatrist or psychologist for his alleged emotional distress. He provided no detail to this doctor as to why he was allegedly distressed; he merely claims it was "work related." This

is clearly insufficient to satisfy the third requirement needed to recover for intentional infliction of emotional distress, that Defendant's conduct caused extreme emotional distress resulting in bodily harm. Plaintiff fails to present any evidence of extreme emotional distress resulting in bodily harm.

Likewise, Plaintiff fails to delineate the conduct for which he claims this emotional distress. There is no evidence of intentional or reckless conduct on the part of any defendants that could be considered extreme or outrageous such as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Summary judgment will be entered in favor of Defendants on Count IV.

## **Breach of Contract**

The existence of a contract necessarily implies that there has been a "meeting of the minds" between the parties which the Court can determine by looking to the intentions of the parties as expressed or manifested in their words or acts. "Whether a contract is made and, if so, what the terms of the contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties."

"A contract is not complete until the proposition of one is presented to the other *and accepted as presented*. The acceptance of a proposition presented by one

party must be accepted by the other in the form tendered; if the acceptance purports to add or alter the proposition made, then neither party is bound. Id. at 617 (citations and emphasis omitted); Abrams, 925 S.W.2d at 937. *Arrowhead Contracting, Inc. v. M.H. Washington, LLC,* 243 S.W.3d 532, 535 -536 (Mo.App. W.D.,2008)(quoting *L.B. v. State Committee of Psychologists,* 912 S.W.2d 611 (Mo.App.1995)(emphasis added).

Plaintiff claims Defendants breached a written agreement, *i.e.,* the Proposal. However, Plaintiff has failed to produce a copy of this Proposal signed by any Defendants as evidence that the parties agreed to the Proposal. The evidence is clear that Defendants never signed the proposal and never agreed to it in writing. Defendants believed the agreement was to provide Plaintiffs with items and product for the sponsorship; they never agreed in writing to any payment. Plaintiffs believed that they would be paid a sum certain for the first year, with additional funds to be paid the second year and an option for a third year. Clearly, there is no meeting of the minds as to the essential terms of the parties' agreement, and as such, no enforceable contract was formed.

Moreover, Plaintiffs' oral contract claim cannot withstand scrutiny under the Missouri Statute of Frauds, which provides: "no action shall be brought. . . upon any agreement that is not to be performed within one year from the making thereof,

unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith." R.S.Mo. § 432.010 (2000). "A contract covered by the Statute of Frauds that is unsigned by the party to be charged is unenforceable and 'nothing short of [the party's] signature can make it into an enforceable contract.'" *Health style Products Int'l, Inc. v. Union Planters Bank*, 193 S.W.3d 330, 333-34 (Mo.App. 2006)(quoting *Midwest Energy, Inc. V. Orion Rood Systems, Inc.*, 14 S.W.3d 154, 157 (Mo.App. 2000). In that Defendants never signed the Proposal, it may not be enforced against them. Defendants are therefore entitled to summary judgement on Plaintiffs' contract claims.

## **Unjust Enrichment**

Plaintiffs claim that Defendants were unjustly enriched from the advertising and promotion of the Pimp Juice product through the sponsorship of Plaintiffs. Plaintiffs claim that profits were received by Fillmore as a result of Plaintiffs' displaying the logos and posting Plaintiffs' race on its website.

> Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust. *Childress Painting & Assocs. v. John Q. Hammons Hotels Two, L.P.*, 106 S.W.3d 558, 562 (Mo.App. W.D.2003). The elements of unjust enrichment are: (a) a benefit conferred by one party on another; (b) appreciation by the receiving party of the fact that what was conferred was a benefit; and

(c) acceptance and retention of the benefit that would render that retention inequitable. *Id.*

*Cridlebaugh v. Putnam County State Bank of Milan*, 192 S.W.3d 540, 543 (Mo.App. W.D.,2006). Plaintiffs have produced no evidence of profits received by Defendants as a result of the sponsorship. Indeed, Defendants have produced evidence that Fillmore did not make any profits as a result of the sponsorship, and that Fillmore has not made any profits since 2005 when it sponsored Plaintiffs. Plaintiffs have failed to establish any of the essential elements of unjust enrichment. Defendants are therefore entitled to judgment as a matter of law on Plaintiffs' claim of unjust enrichment.

## **Conclusion**

Based upon the foregoing analysis, Plaintiffs have failed to "'set forth specific facts showing that there is a genuine issue for trial.'" *Honea,* 458 F.3d at 791. Defendants are therefore entitled to judgment as a matter of law. Fed.R.Civ. Rule 56(e).

Because it appears that these are the only defendants against whom claims still remain pending, as previously noted, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court determines that there is no just reason for delaying entry of judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment, [Doc. No.'s 77 and 84], are **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 54(b), a separate judgment in accordance with this Opinion, Memorandum and Order will be entered this same date.

Dated this 31st day of March, 2008.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE